IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVID C. HENDERSON, Individually and on Behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>REMINGTON ARMS COMPANY, LLC.,<br>CASCADE CARTRIDGE, INC. a/k/a CCI AMMUNITION<br><br>    Defendants. | Civil Action No. 3:12-CV-00322<br><br>Complaint – Class Action.<br><br>JURY DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff David C. Henderson ("Plaintiff"), on behalf of himself and all others similarly situated ("Class," as defined below), brings the following class action complaint against Defendants Remington Arms Company, LLC and Cascade Cartridge, Inc. a/k/a CCI Ammunition ("Remington", "CCI" or collectively "Defendants"), and upon personal knowledge as to his own acts and status, and upon information and belief as to all other matters, alleges as follows:

### I. NATURE OF THE ACTION

1. The action arises from Defendant Remington's negligent, unfair and deceptive acts in designing, manufacturing, marketing, and ultimately recalling the Remington Model 597 .17 HMR semi-automatic rifle and the Remington .17 HMR ammunition for use in semi-automatic firearms as well as Defendant CCI Ammunition's negligent, unfair and deceptive acts in designing and manufacturing .17 HMR ammunition for use in the Remington Model 597 .17 HMR semi-automatic rifle and its complicity in the inadequate recall issued by Co-Defendant Remington.

2. The Remington Model 597 .17 HMR semi-automatic rifle (hereinafter "597" or the "rifle") features a bolt guidance system with twin tool steel guide rods, that was offered with synthetic or laminate stocks with an 8 round magazine. On information and belief, Defendant Remington manufactured and sold tens of thousands of the 597 and tens of thousands, if not millions of rounds, of the .17 HMR ammunition under its private label agreement with co-Defendant CCI. On information and belief, Defendant CCI manufactured and sold hundreds of thousands if not millions of rounds of .17 HMR ammunition for use in Remington Model 597 .17 HMR semi-automatic rifles under a variety of private label agreements, including but not limited to Remington, Federal and Hornady.

3. In or about August, 2009, Remington made its first public statements acknowledging that their Remington Model 597 .17 HMR semi-automatic rifles may explode while using .17 HMR ammunition. Defendant Remington issued a "Safety Warning and Recall Notice", advising owners and users of the 597 that "Remington has been notified by its supplier of .17 HMR ammunition that .17 HMR ammunition is not suitable for use in semi-automatic weapons." Remington asked consumers to discontinue use of both products immediately. On information and belief, Remington's efforts to notify owners and users of the 597 was limited to the aforementioned Safety Warning and Recall Notice posted on its website and presently located at http://www.remington.com/pages/news-and-resources/safety-center/safety-warning-recall-notice.aspx.

4. In conjunction with the recall, Remington offered (1) a $200 (if synthetic stock) or $250 (if laminate stock) rebate for the purchase of a replacement Remington firearm and (2) a $10.00 coupon for each complete box of 50 rounds of Remington branded .17 HMR ammunition returned to Remington for purchase of any Remington ammunition.

CLASS ACTION COMPLAINT                                                                                                PAGE 2

Case 1:12-cv-00437-JAB-JLW   Document 1   Filed 01/31/12   Page 2 of 17

5. The coupon for purchase of a firearm was well below the purchase price paid by Plaintiff and members of the class for the Model 597 .17 HMR semi-automatic rifle and required Plaintiff and members of the class to purchase a new firearm in order to redeem the coupon.

6. The coupon for purchase of ammunition was well below the purchase price paid by Plaintiff and members of the class for the .17 HMR ammunition and required Plaintiff and members of the class to purchase new ammunition in order to redeem the coupon. Further, those members of the class, including Plaintiff, who purchased .17 HMR ammunition manufactured by CCI but labeled under a brand other than Remington, such as Federal or Hornady, were offered no compensation for the ammunition they purchased to use in the rifle.

7. As a result of Defendants' negligent design, manufacture and marketing, as well as its unfair and deceptive acts regarding the Remington Model 597 .17 HMR semi-automatic rifle and the Remington .17 HMR ammunition, Plaintiff and the other Class members received defective and unreasonably dangerous products for which they substantially overpaid because the rifle and ammunition were useless at Defendants' instruction after the recall, and any coupon did not reimburse Plaintiff and other class members, but instead required them to purchase entirely new products, all to the benefit of Defendants and detriment of the Plaintiff and the other class members.

8. Plaintiff and the other members of the Class have sustained injuries in fact caused by Defendants' conduct as alleged herein in that the rifle cannot be used or sold, and the ammunition either cannot be used or sold or, at a minimum, cannot be used for the purpose for which it was purchased, *i.e.*, for use in the rifle, thereby rendering them worthless.

9. The recall undertaken by Remington is deficient in that it fails to adequately compensate Class members for the full value of the defective rifle and ammunition and is

further defective in that it was not publicized in such a fashion as to avoid further personal injuries to members of the Class, including Plaintiff.

10. Plaintiff brings this lawsuit against Defendants on behalf of himself and a class of all other similarly-situated nationwide purchasers of Remington Model 597 .17 HMR semi-automatic rifles and .17 HMR ammunition manufactured by CCI for use in the rifle, alleging violations of the Magnuson-Moss Warranty Act, unjust enrichment, and seeking injunctive and declaratory relief.

## II. JURISDICTION AND VENUE

11. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and members of the Class are citizens of a state different from Defendants.

12. This Court has jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint took place in the State of Texas and because Defendants are authorized to do business in the State of Texas.

13. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1391 as Plaintiff has pled violations and requested remedies under the Magnuson-Moss Warranty Act.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District; because Defendants have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution and sale of their products in this District, including the products that are the subject of this suit; because Defendants conduct substantial business in this district; and because Defendants are subject to personal jurisdiction in this District.

## III. PARTIES

*Plaintiff*

15. David C. Henderson is an adult over the age of 18 years and a citizen of Bedford, Tarrant County, Texas.

*Defendants*

16. Remington Arms Company, LLC is incorporated in the State of Delaware, with its principal place of business and corporate headquarters in Madison, North Carolina. Remington Arms Company, LLC can be served by serving its Registered Agent, CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, TN 37929-9710. Remington is a leading firearm and ammunition company whose products are marketed throughout the United States and the world, including to tens of thousands of consumers in the State of Texas.

17. Cascade Cartridge, Inc. also known as CCI Ammunition maintains its principal place of business and corporate headquarters in Lewiston, Idaho. CCI can be served by serving 2299 Snake River Ave., Lewiston, Idaho 83501. CCI is a leading ammunition company whose products are marketed throughout the United States and the world, including to tens of thousands of consumers in the State of Texas.

## IV. FACTUAL ALLEGATIONS

18. Remington manufactures the Remington Model 597 .17 HMR semi-automatic rifle and commissions co-Defendant CCI to manufacture the Remington .17 HMR ammunition under the Remington label.

19. CCI manufactures, loads, and supplies ammunition to Remington, including the Remington .17 HMR ammunition, the Federal .17 HMR ammunition, the Hornady .17 HMR ammunition and a variety of other private label ammos that are suitable for and routinely used by owners of the 597 rifle.

20. Plaintiff is a "consumer" of a Remington Model 597 .17 HMR semi-automatic rifle and .17 HMR ammunition as defined 15 USC §2301(3) in that he was a buyer of the rifle and ammunition.

21. The rifle was purchased in reliance on the representations of Remington as to its products at the time of purchasing, including:

    a. "No other arms and ammunition manufacturer combines so much tradition and experience with innovative technology and precision craftsmanship."

    b. "The reasons for choosing Remington are as numerous as the models of guns and types of ammunition we make. Some say it's the legendary accuracy. Some say it's the unbeatable value. . . . Regardless of the reason, we remain unwavering on our dedication to producing firearms, ammunition and accessories which embody the highest standards in quality and are instilled with the spirit of the legendary brand – Remington."

    c. ***Model 597 – Where Technology Meets Craftsmanship***

    Whether you use it for hunting, serious target shooting, or an afternoon of plinking, one thing is certain: This is no ordinary rimfire rifle. Far from it. In fact, the Model 597 is easily the most advanced autoloading rimfire rifle ever built. And the first breakthrough in autoloading rimfire technology in 35 years. The difference starts with our proprietary bolt-guidance system. It features a unique set of twin tool-steel guide rails (other brands feature only grooved aluminum slots). Because steel is stronger and far more resistant to wear, the result is not only better stability, feeding reliability and accuracy right out of the box, but significantly superior performance through time.

    Of course, we didn't stop there. The bolt, hammer, and sear of the Model 597 all feature an exclusive Teflon/nickel plating for absolutely smooth, dependable operation and an ultra-crisp trigger pull (that stays that way). To assure reliable, long-life accuracy, we've also incorporated a uniquely positive-locking, permanently rigid barrel attachment clamp. Receivers are grooved for standard rimfire mounts and tapped/drilled for Weaver-style bases. Completing the breakthrough design are an innovative last-shot magazine.

    d. ***Rimfire – From International Competition to Tin Can Demolition***

    Over the years, no manufacturer has been responsible for more advancements in rimfire ammunition than Remington. No doubt this is because we give our rimfire ammunition the same meticulous manufacturing attention as our centerfire ammunition. As a result, we produce the widest variety of rimfire

loadings for every possible end use. Whether its hunting, plinking, or competing, Remington rimfire cartridges offer consistently outstanding performance.

At Remington, we're more than just the industry leader in quality and reliability. By bringing you industry firsts, like the Yellow Jacket and Viper hyper velocity ammunition, we've solidified our reputation as leaders in innovation too. Our commitment to bring you the hottest ammunition on the market continues with the .17 HMR.

22. These representations as to the Remington Model 597 .17 HMR semi-automatic rifle and the Remington .17 HMR ammunition were false, misleading, and deceptive.

23. On or about August .17, 2009, Remington recalled the Remington Model 597 .17 HMR semi-automatic rifle and the Remington .17 HMR ammunition due to the potential of an explosion when fired.

24. In its Safety Warning and Recall Notice, Remington states that ".17 HMR ammunition is not for use in semi-automatic firearms…[and] the use of this ammunition in a semi-automatic firearm could result in property damage or serious personal injury." *See* Exhibit 1 Safety Warning and Recall Notice.

25. Consumers were instructed to "immediately discontinue use of the Remington .17 HMR ammuntion" and "immediately stop using your Remington Model 597 .17 HMR semi-automatic rifle". *Id.*

26. As to the ammunition, "Remington will provide you with a $10.00 coupon for each complete box of 50 rounds branded .17 HMR ammunition you return to Remington." *Id.* "This coupon is for end users only and will be good for the purchase of any Remington ammunition at your local dealer." *Id.*

27. As to the firearm, "In return for your Remington Model 597 .17 HMR synthetic stock semi-automatic rifle, Remington will provide you a coupon valued at $200.00 good for the purchase of a Remington replacement firearm." *Id.* "If you have a laminate stock Remington

Model 597 .17 HMR semi-automatic rifle, Remington will provide you a coupon valued at $250.00 good for the purchase of a replacement Remington firearm." *Id.* "This coupon is for end users only and will be good for the purchase of a Remington firearm at your local dealer." *Id.*

28. CCI issued a similar notice and warning on or about August 20, 2009. *See* Exhibit 2, .17 HMR Ammunition Safety and Notice Warning.

29. Plaintiff's rifle as well as his ammunition not in a complete set of 50 have been rendered useless and valueless by virtue of the safety recall, as the rifle is too dangerous to shoot or sell and the ammunition is either too dangerous to shoot or sell or is otherwise worthless to Plaintiff who bought the ammunition specifically for use with his 597 rifle.

30. Plaintiff's rifle was purchased in or around 2007 at a Cabela's Store in Fort Worth, Texas; Plaintiff believes that he sent a registration card to Remington following his purchase of the rifle.

31. Plaintiff's rifle had been used sparingly prior to November 2011, with roughly one hundred and fifty shots being fired from the rifle. Between the time of purchase and November 2011, Plaintiff's rifle was stored continuously in Tarrant County, Texas.

32. On information and belief, Remington's publication of the recall was limited and not widely publicized; Remington did not contact individual owners of the rifles and did little to ensure that rifle owners knew of the dangers associated with the use of the 597.

33. Plaintiff was not contacted regarding the recall and, further, had no actual or constructive notice of the safety hazards of the rifle and ammunition.

CLASS ACTION COMPLAINT                                                                                                   PAGE 8

Case 1:12-cv-00437-JAB-JLW   Document 1   Filed 01/31/12   Page 8 of 17

34. Various blogs and online communities on the internet are replete with examples of frustrated rifle owners complaining that they had no knowledge of the recall until months if not years after the recall was originally issued:[1]

>    a) Bought my ..17 two years ago and fired it for the first time this past weekend. second shot blew the clip out and apart, couldn't hear for a while out of my right ear. This was to go to my 10 year old grandson and I was sighting the scope in. I did not know about any recall until I Googled the 597 and was surprised to see that the recall was initiated so long ago! I am sure the Remington Co. could have notified each purchaser of the danger and the recall. I agree with the other comments that it is "the weapon that is faulty", "not the ammo"! We all should receive a refund that equals the purchase price paid towards another Remington product. I hope Brian is successful in his endeavor and I'll await the outcome before I proceed. The $200.00 coupon will leave a very sour taste in my mouth and I will not purchase another Remington product.
>    ***Posted May 2, 2011 at 3:17 pm by "Quay".
>
>    b) I was at the range the other day and my 16 year old son was shooting my 597 ..17 when the magazine blew out of the bottom atfer the first shot. A friend of his told him about the recall. I called Remington this morning and htye offered the $200.00 or to rechamber to a 22 mag. Thye said that there has been a recall since 2009 due to the ammo. I told them that the ammo I was shooting was purchased before then, no comment! Looks like I will go with the rechamber and look for another manufacture of ..17.
>    ***Posted April 20, 2011 at 1:46 am by "Greg".
>
>    c) Hello. I had a model 597 and was 180 miles from home shooting varmits when it happened, the slide did not close and lock I did not notice it and fired a round that blowing the slide apart and the mag out the bottom of the rifle, thus setting off a round that blew the scope off the rifle. I ended up loosing the hearing in my right ear and had to drive into town to the Hospital 180 miles away.
>    ***Posted August 1, 2010 at 5:31 am by "John Doe".

---

[1] All blog quotes ([sic] throughout) are from "The Firearm Blog" at:
http://www.thefirearmblog.com/blog/2009/08/19/remington-17-hmr-recall-buyback-ammunition-and-model-597/.

35. On information and belief, Remington was aware of the defects and dangers associated with the rifle prior to the date of the recall, as outlined in various blogs and online internet communities:

> I too like my ..17 597…..But it did blow the magazine in my hand. Remington rrplaced the rifle two years ago, but has now recalled them. The Remington customer service agent I spoke to said Remington would rebarrel the gun to .22 Mag at no charge.
> ***Posted November 17, 2010 at 10:18 pm by "Guy Fowl".

36. On November 19, 2011, Plaintiff was shooting his rifle in Eastland County, Texas. On his third shot attempt, Plaintiff's rifle burst, with smoke coming out of the ejection port and debris consisting of plastic and metal from the magazine blew out of the bottom of the gun, causing Plaintiff to sustain powder burns to his left wrist. In addition, the debris penetrated Plaintiff's left hand causing it to bleed. Plaintiff was using Hornady ammunition, both of which are, on information and belief, produced by CCI.

37. Prior to November 19, 2011, Plaintiff had not seen or heard any information related to the recall. Had Plaintiff learned of the recall prior to November 19, 2011, he would not have fired the rifle.

38. After the rifle exploded Plaintiff learned of the recall and after contacting Remington, opted not to take advantage of the coupons offered by Remington because they did not adequately compensate him for his economic loss.

## V. CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of a Class ("Class") defined as:

> All residents of the United States who, within the statutory limitations periods applicable to the herein-alleged causes of action including, without limitation, the period following the filing of this action, owned a Remington Model 597 .17

HMR semi-automatic rifle or any type of .17 HMR ammunition manufactured by CCI Ammunition that was purchased for use in that firearm.

Excluded from the Class are Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judges to whom this case is assigned and any immediate family members thereof.

40. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Plaintiffs do not know the exact size, geographic dispersion or identities of the members of the proposed Class, since such information is in the exclusive control of Defendants. Plaintiffs believe that the class encompasses at least hundreds of individuals whose identities can be readily determined from Defendants' books and records. Therefore, the proposed class is so numerous that joinder of all members is impracticable.

42. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law or fact which predominate over any questions affecting individual Class members. Common questions of law or fact, include, without limitation:

    a. whether Defendants' actions are unfair and deceptive;

    b. whether Defendants' conduct as alleged herein violates the Magnuson-Moss Warranty Act;

    c. whether Defendants' conduct as alleged herein constitutes unjust enrichment;

    d. whether Plaintiff and the other Class members suffered monetary damages and the proper measure of that loss;

    e. whether the Plaintiff and the other Class members are entitled to an award of punitive damages; and

  f. whether the Plaintiff and the other Class members are entitled to declaratory and/or injunctive relief.

  43. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all Class members purchased the Remington Model 597 .17 HMR semi-automatic rifle and .17 HMR ammunition for use with said firearm and each Class Member was offered or received a coupon for the purchase of a new firearm or ammunition.

  44. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; Plaintiff and counsel are financially able to represent the class and have agreed by contract that counsel shall provide the costs associated with this action during the pendency of the litigation, subject to reimbursement of said costs from any potential recovery; and Plaintiff intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the Class' interests.

  45. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class as a whole.

  46. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to

individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS FOR RELIEF

### Count I – Breach of Magnuson Moss Warranty Act

47. Plaintiff incorporates by reference each of the above paragraphs of this Complaint as though fully stated herein.

48. All Remington Model 597 .17 HMR semi-automatic rifles and .17 HMR ammunition are consumer products as defined by 15 U.S.C. §2301(1), part of the Magnusson-Moss Warranty Act, 15 U.S.C. §2301-2312.

49. With respect to all Remington Model 597 .17 HMR semi-automatic rifles, Remington provided a written 2 year limited warranty that the rifles would be free of design and manufacturing defects, and that Remington would repair or replace any rifle as a remedy for a breach of warranty, which is a written limited warranty as defined by 15 U.S.C. §2301(6) and 2303(a).

50. Remington's Model 597 .17 HMR semi-automatic rifles do not perform as warranted since they have a design and/or manufacturing defect that makes them unsafe to use for their intended purpose, as evidenced by the fact Remington had to recall all of its Model 597 .17 HMR semi-automatic rifles and instructed consumers not to use them.

CLASS ACTION COMPLAINT  PAGE 13

Case 1:12-cv-00437-JAB-JLW   Document 1   Filed 01/31/12   Page 13 of 17

51. Remington's limited warranty has failed of its essential purpose in that Remington is either unable or unwilling to repair, replace, or refund the actual purchase price.

52. Because Remington's limited warranty has failed of its essential purpose, Plaintiff additionally seeks damages for breach of the implied warranties of merchantability and fitness for a particular purpose.

53. All conditions precedent to Plaintiff bringing a class action under the Magnuson-Moss Warranty Act have been satisfied.

54. Plaintiff and members of the Class have given and hereby gives Defendants a reasonable opportunity to cure its failure to remedy its breach of its written warranty.

55. Plaintiff and members of the Class seek actual damages consisting of the return of actual purchase price of each Remington Model 597 .17 HMR semi-automatic rifle owned by each Class member and the return of the purchase price for all .17 HMR ammunition purchased for use in said rifle, plus costs, expenses and attorneys' fees.

### Count II – Unjust Enrichment

56. Plaintiff incorporates by reference each of the above paragraphs of this Complaint as though fully stated herein.

57. This claim is asserted in the alternative on behalf of Plaintiff and the other Class members to the extent that any contracts do not govern the entirety of the subject matter of the dispute with Remington and CCI.

58. Plaintiff and the other Class members conferred a tangible economic benefit upon Remington and CCI by purchasing the Remington Model 597 .17 HMR semi-automatic rifle and .17 HMR ammunition for use with said rifle. Plaintiff and the other Class members

would have expected remuneration from Defendants at the time this benefit was conferred had they known that the products did not perform as promised.

59. Plaintiffs and the other Class members did not receive total remuneration by the coupons given out by Remington in that Plaintiff and the other Class members were not compensated for the amount they paid for the products and were only given a small amount of compensation that required the purchase of a new product above and beyond the value of the coupon.

60. It would be inequitable for Defendants to retain the profits, benefits and other compensation obtained by their wrongful conduct in selling their Remington Model 597 .17 HMR semi-automatic rifle and .17 HMR ammunition purchased for use in said rifle and the subsequent coupon issued as a result of the recall requiring Plaintiffs and members of the Class to expend additional monies to Defendants benefit in order to receive any sort of compensation.

61. As a direct and proximate result of Defendants' misconduct as set forth above, Defendants have been unjustly enriched at the expense of Plaintiff and the other Class members.

62. Plaintiff, on behalf of himself and the other Class members, seeks restitution from Defendants, and an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the Class proposed in this Complaint, respectfully requests:

A. the Court certify the Class pursuant to Fed. R. Civ. P. 23(b)(2), and 23(b)(3), and adjudge Plaintiff to be an adequate representative thereof;

B.  the Court enter an Order requiring Defendants to pay Plaintiff's and the other Class members' actual damages (including multiple damages) or statutory damages, whichever is greater;

C.  the Court enter an Order awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices set forth above, requiring Defendants to immediately re-issue the recall notice in a commercially viable manner, including direct communications with known owners of the rifle and publication in widely read media, to insure that further individuals such as Plaintiff and other members of the Class are not injured by the continued use of the defective products and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and/or disgorgement of gains from any unlawful conduct as alleged herein;

D.  the Court enter an Order awarding Plaintiff and the other members of the Class their expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law; and

E.  for such other and further relief as may be just and proper.

## VIII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: January 30, 2012

Respectfully submitted,

MACLEAN LAW FIRM

By:    /s/ John R. "Scotty" MacLean
Scotty MacLean
State Bar No. 00787942

3500 Hulen Street, Suite 100
Fort Worth, Texas 76107

(817) 529-1000 (Telephone)
(817) 698-9401 (Facsimile)
smaclean@macleanfirm.com


Jon D. Robinson
Christopher M. Ellis
BOLEN, ROBINSON & ELLIS, LLP
202 South Franklin Street, 2nd Floor
Decatur, Illinois 62523
Telephone: 217.429.4296
Facsimile: 217.329.0034
Email: jrobinson@brelaw.com
       cellis@brelaw.com


Eric D. Holland
Seth Crompton
HOLLAND, GROVES, SCHNELLER & STOLZE, LLC
300 N Tucker, Suite 801
St. Louis, Missouri 63101
Telephone: 314.241.8111
Facsimile: 314.241.5554
Email: eholland@allfela.com
       scrompton@allfela.com